## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

CATHERINE ANN CYR,
Administratrix of the Estate of
Vincent Alexander Davalos,

      Plaintiff,

      v.

SCHUYLKILL COUNTY, et al.,

      Defendant.

CIVIL ACTION NO. 3:22-cv-00453

(SAPORITO, M.J.)

## **MEMORANDUM**

This federal civil rights action arises out of the death of Vincent Alexander Davalos on June 9, 2020. At the time of his death, Davalos, a pre-trial detainee, was incarcerated at the Schuylkill County Prison after being arrested by the Frackville Borough Police Department following a vehicle pursuit.

The complaint in this action was filed on March 25, 2022, by the decedent's mother, Catherine Ann Cyr, appearing through counsel. She brings this action in her capacity as the Administratrix of the decedent's estate. The five-count complaint names eleven (11) defendants. These include Schuykill County, PrimeCare Medical, Inc., Prison employees,

Cody Bettinger, Cory Sabol, William Klinger, David Rainis, and Lieutenant Gary Keppel, and PrimeCare nurses who provided medical services at the prison, Carina Gross and Alyssa Hysock.

The complaint alleges that the decedent was denied adequate medical care while incarcerated at the Schuylkill County Prison resulting in his death on June 9, 2020.  Based on this, the plaintiff brings multiple Section 1983 claims against the defendants on alternative legal theories. The County defendants have filed an answer to the complaint and an amended answer.  (Doc. 22; Doc. 24).

Presently before the Court is the motion to dismiss filed by PrimeCare Medical, Inc., Nurse Corina Gross, and Nurse Alyssa Hysock (the "PrimeCare defendants") on May 31, 2022. (Doc. 21).

The scope of the PrimeCare defendants' motion to dismiss is narrow—whether PrimeCare and its nurses Gross and Hysock should be dismissed from the denial of medical care claims and the failure to intervene claim. (Counts One - Three).

## I.     Factual Background

As the motion to dismiss does not include the County defendants, we will confine the facts to the allegations against PrimeCare and its nurses.

The complaint alleges that on June 9, 2020, Davalos was arrested and charged with fleeing or attempting to elude a police officer following a vehicle pursuit by members of the Frackville Borough Police Department.  At the time of his arrest, Davalos was under the influence of methamphetamines and heroin.  He was arraigned before a magisterial district judge and immediately committed to the prison for his failure to post bail.  At some point before he entered the Schuylkill County Prison, Davalos ingested three Zip-loc bags containing fentanyl, one of which subsequently opened while in Davalos's stomach.  Sometime between 3:11 p.m. and 4:12 p.m. on June 9, 2020, Davalos encountered PrimeCare employees Hysock and Gross.

The complaint further alleges that the individual defendants, including Hysock and Gross, knew and/or should have known that Davalos was intoxicated, withdrawing, and/or overdosing based on his deteriorating condition.  Also, it was noted, in writing, that Davalos had

3

consumed narcotics that day and he appeared under the influence of drugs. Despite that documentation and direct observation of Davalos's rapidly deteriorating physical condition during his first hour of incarceration, the individual defendants did not provide Davalos with medical care, nor did they place him on any form of watch. Rather, the individual defendants sent Davalos to an unmonitored cell in general population, with the cell door shut for three and one-half hours, after which he died.

Upon his arrival at the Prison, Nurse Hysock took Davalos's temperature and pulse. She completed the "Health Screening Form" in which she noted "0.5g heroin QD," and she found that, despite Davalos's complaints about his breathing issues, he was not experiencing respiratory distress. Davalos was thereafter accepted into the prison. Along with prison officials, Nurse Hysock led Davalos down the front office hallway towards the front booking desk. Thereafter, defendant Bettinger led Mr. Davalos to his cell on the second floor on E-Block. Bettinger left that location at 3:56 p.m.

Sometime between 4:07 p.m. and 4:29 p.m., Nurse Gross was accompanied by defendants Sabol and Klinger to E-Block, where they

observed Davalos's intoxicated and withdrawing and/or overdosing state. Nurse Gross noted that Davalos was having "seizure like activity w/tremors." Davalos informed Nurse Gross that his last drug use was that day, and she placed him on a Tylenol detox taper and advised him to increase his fluids. Despite their observations and notations, Davalos was not placed in a cell for observation, nor was he sent to a hospital for monitoring and treatment. Rather, Davalos was left alone in his cell at approximately 4:12 p.m.

At about 7:42 p.m., while doing rounds on E-Block, defendant Sabol observed Davalos lying by his cell door unresponsive and not breathing. Nurse Gross and other prison employees were called, and emergency medical services was contacted. After no signs of electrical activity were found, and after three rounds of epinephrine were administered to Davalos with no response, he was transported to Lehigh Valley Hospital Schuylkill, where he was pronounced dead at 8:31 p.m.

The complaint alleges that Davalos had a serious medical need at the time he was committed to the prison on June 9, 2020, as he had a substance abuse disorder and he was intoxicated, withdrawing, and/or overdosing, which was apparent, and for which he required medical

attention.  Despite the observation of seizure-like symptoms, neither the County defendants nor the PrimeCare nurse defendants checked on Mr. Davalos until Davalos was observed by defendant Sabol lying on the floor of his cell at 7:42 p.m.

The PrimeCare defendants filed their motion to dismiss on May 31, 2022. (Doc. 21).  They raise three issues: (1) the complaint fails to demonstrate a deliberate indifference to a serious medical need; (2) the complaint fails to demonstrate a violation of the defendant's constitutional rights and deficient policies and procedures for providing medical care at the prison; and (3) there is no cause of action for medical staff failure to intervene in a prison.  The motion is fully briefed and ripe for disposition (Doc. 25; Doc. 28; Doc. 29).  For the reasons set forth herein, we will deny the motion.

## II.  *Legal Standards*

Rule 12 (b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief is granted." Fed. R. Civ. P. 12(b)(6).  "Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the

plaintiff, a court finds the plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen, Inc.,* 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). In deciding the motion, the court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322 (2007). Although the Court must accept the fact allegations in the complaint as true, it is not compelled to accept "unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Morrow v. Balaski,* 719 F.3d 160, 165 (3d Cir. 2013) (quoting *Baraka v. McGreevy*, 481 F.3d 187, 195 (3d Cir. 2007). Nor is it required to credit factual allegations contradicted by indisputably authentic documents on which the complaint relies or matters of public record of which we may take judicial notice. *In re Washington Mut. Inc.*, 741 Fed. App'x 88, 91 n.3 (3d Cir. 2018); *Sourovelis v. City of Philadelphia*, 246 F. Supp. 3d 1058, 1075 (E.D. Pa. 2017); *Banks v. Cty. of Allegheny*, 568 F. Supp. 2d 579, 588-89 (W.D. Pa. 2008).

## III.  *Discussion*

The plaintiff has brought this federal civil rights action primarily under 42 U.S.C. § 1983. Section 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. Section 1983 does not create substantive rights, but instead provides remedies for rights established elsewhere. *City of Oklahoma v. Tuttle*, 471 U.S. 808, 816 (1985). To establish a § 1983 claim, the plaintiff must establish that the defendant, acting under color of state law, deprived the plaintiff of a right secured by the United States Constitution. *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995). To avoid dismissal for failure to state a claim, a civil rights complaint must state the conduct, time, place, and persons responsible for the alleged civil rights violations. *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005).

Here, the plaintiff has asserted federal civil rights claims under several alternative theories of liability. In Count One, she claims that the

8

PrimeCare nurse defendants were deliberately indifferent to the decedent's serious medical needs while incarcerated, in violation of the decedent's Fourteenth Amendment substantive due process rights.[1] In Count Two, she seeks to impose *Monell*[2] liability on the County and PrimeCare for a violation of Davalos's constitutional rights and a violation of its policies or customs. In Count Three, she claims that the PrimeCare nurse defendants failed to intervene to protect the decedent from the denial of medical care despite their reasonable opportunity to do so.

### A.  *The Complaint adequately alleges a Denial of Medical Care Claim*

The PrimeCare nurse defendants argue that Davalos was not denied medical care because he was administered a Tylenol taper to address the anticipated withdrawal, and had he admitted to ingesting Fentanyl, perhaps they would have implemented a different treatment plan. The plaintiff disputes that the Tylenol taper was a "treatment

---

[1]    The decedent had the status of a pretrial detainee—not a convicted inmate—at the time of the underlying events, and the plaintiff has properly pleaded violations of the decedent's substantive due process rights under the Fourteenth Amendment.  *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 581 (3d. Cir. 2003).

[2]    *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658 (1978).

9

plan." (Doc. 28, at 18 n.3). Rather, she maintains that the PrimeCare nurses should have provided adequate medical care to Davalos, taking into consideration his displayed individual characteristics. (*Id.*)

Claims for denial of medical care to pre-trial detainees are analyzed under the same standards as Eighth Amendment claims for denial of medical care to prisoners. *Natale.* The PrimeCare defendants do not specifically dispute that Davalos had a serious medical condition. Rather, they maintain that an individual under the influence of heroin is not uncommon in a prison setting. Further, they contend that Davalos was administered a Tylenol taper as part of his treatment to address the anticipated withdrawal. (*Id.* at 10). Nonetheless, we find that a fair reading of the complaint suggests that Davalos's serious medical need was "so obvious that a lay person would easily recognize the necessity" for some form of medical treatment. *Monmouth Cty. Corr. Inst. Inmates v. Lanzarro*, 834 F.2d 326, 347 (3d Cir. 1987). Davalos was noted to have "fever/sweating, chills, body aches, fatigue and headache," and "seizure like activity w/tremors." (Doc. 1 ¶¶54, 80). The question, therefore, is whether the PrimeCare nurse defendants were deliberately indifferent to Davalos's serious medical needs.

"[P]rison officials violate the Eighth Amendment's proscription of cruel and unusual punishment when they exhibit 'deliberate indifference to serious medical needs of prisoners.'" *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1023 (3d Cir. 1991) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)); *see also Herman v. Cty. of York*, 482 F. Supp. 2d 554, 564 (M.D. Pa. 2007) (quoting *Estelle*, 429 U.S. at 105–06). "An overdose is undoubtedly a serious medical condition." *Wichterman v. City of Philadelphia*, Civil Action No. 16-5796, 2019 WL 3216609, at *6 (E.D. Pa. July 17, 2019).

> To be liable on a deliberate indifference claim, a defendant prison official must both "know[ ] of and disregard[ ] an excessive risk to inmate health or safety." The knowledge element of deliberate indifference is subjective, not objective knowledge, meaning that the official must actually be aware of the existence of the excessive risk; it is not sufficient that the official should have been aware. However, subjective knowledge on the part of the official can be proved by circumstantial evidence to the effect that the excessive risk was so obvious that the official must have known of the risk. Finally, a defendant can rebut a prima facie demonstration of deliberate indifference either by establishing that he did not have the requisite level of knowledge or awareness of the risk, or that, although he did know of the risk, he took reasonable steps to prevent the harm from occurring.

11

*Beers-Capitol v. Whetzel*, 256 F.3d 120, 133 (3d Cir. 2001) (quoting and citing *Farmer v. Brennan*, 511 U.S. 825, 837–38, 842, 844 (1994)) (citations omitted) (alterations in original).

Here, the complaint alleges that the nurse defendants were aware that Davalos informed them of his prior drug use that day; he exhibited signs of drug intoxication, withdrawal, and/or overdose; he complained of breathing issues; he had previously ingested heroin; he showed signs of fever/chills, body aches, fatigue and headache; and he exhibited signs of seizure-like activity with tremors. Despite these symptoms, the nurse defendants did not recommend that he be transported to a hospital or other care facility.  Rather, Nurse Gross administered a Tylenol taper and recommended that he increase his fluids.  They failed to monitor him or provide any additional care.  When considered together, we find that these allegations are sufficient to constitute a deliberate indifference to substantiate a denial of medical care claim.  *See Sandoval v. Cty. Of San Diego*, 985 F.3d 657, 670-71 (9th Cir. 2021) (finding deliberate indifference where an arrestee died of a methamphetamine overdose while in custody after jail medical staff failed to monitor him or provide care, despite

12

arrestee showing signs of physical distress).  Therefore, we will deny the motion to dismiss.

**B.    *The Complaint adequately alleges a Violation of a Constitutional Right and a Violation of Policies or Customs***

Here, PrimeCare argues that the plaintiff cannot demonstrate a constitutional violation, and therefore, she cannot sustain a cause of action under *Monell*.  It contends that Davalos's death was not caused by constitutionally deficient medical care because the nurses placed him on a drug detox protocol, and he failed to inform anyone that he illicitly ingested Fentanyl.  The plaintiff posits that Davalos's failure to inform anyone that he swallowed drugs was not alleged in the complaint and, therefore, we should not consider it.  Also, she argues that the complaint adequately alleged a denial of medical care in Count One.  We agree.

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).  An entity that contracts with a municipality, such as PrimeCare, is only liable under § 1983 if a policy or custom of that entity caused the constitutional

violation in question. *Monell*, 436 U.S. at 694; *Natale*, 318 F.3d at 583-84; *see also Nunez v. Prime Care Health, Inc.*, Civil Action No. 19-CV-0859, 2019 WL 1400466 at * 1 (E.D. Pa. Mar. 27, 2019); *see also Gannaway v. PrimeCare Med., Inc.*, 652 Fed. App'x 91, 94 (3d Cir. 2016) (per curiam) ("[W]ith respect to the claims against PrimeCare Medical, Inc., a private vendor that provided medical services to inmates, we agree that Gannaway failed to identify an established policy or custom that resulted in the alleged constitutional violations at issue" which was fatal to his claim). A plaintiff "must identify [the] custom or policy, and specify what exactly that custom or policy was" to satisfy the pleading standard. *McTernan v. City of York,* 564 F.3d 636, 658 (3d Cir. 2009).

Here, the plaintiff has identified several policies, customs, or practices which PrimeCare allegedly violated, thus causing the deprivation of Davalos's constitutional rights. Those allegations include the following:

> 112. . . . PrimeCare had policies, customs and/or practices that resulted in the violation of Mr. Davalos's rights under the Eighth and/or Fourteenth Amendments.

> 113. Particularly, . . . PrimeCare had policies, customs[,] and/or practices related to, *inter alia*, insufficient staffing, failing to provide adequate

medical attention for inmates in immediate need of same, and failing to train employees on diagnosing and/or treating intoxicated, withdrawing or overdosing inmates.

114. . . . PrimeCare also had a policy, custom[,] and/or practice of failing to train, instruct, supervise[,] and/or control their employees in recognizing when emergency medical care is required for inmates facing imminent death.

115. Such training would have prevented Mr. Davalos from dying. The need for such training was obvious.

116. . . . PrimeCare further had a policy, custom[,] and/or practice of placing inmates in the need of emergency medical attention in the Prison without monitoring and/or close observation and without transferring those inmates to the hospital because of staffing and/or cost concerns.

117. . . . PrimeCare's policies, customs[,] and/or practices concerning inmates and substance abuse disorders or inmates suffering from withdrawal symptoms are unconstitutional, in that[,] despite their knowledge that many Prison inmates have some sort of substance use disorder, they choose not to have (or not to have medically effective) policies to ease the suffering of such inmates with substance abuse disorders, or to have any requirements for treating such inmates' substance use disorders or withdrawal symptoms.

118. . . . PrimeCare further had policies, customs[,] and/or practices of failing to train their employees on recognizing the signs of drug overdose and responding appropriately.

15

119. . . . PrimeCare's policies, customs[,] and/or practices were the cause of and moving force behind the violation of Mr. Davalos's Eighth Amendment and/or Fourteenth Amendment rights.

120. Had . . . PrimeCare properly trained their employees in dealing with emergency medical situations such as overdoses, Mr. Davalos would not have died.

121. . . . PrimeCare therefore violated Mr. Davalos's constitutional rights.

(Doc. 1 ¶¶112-121).

We find that the plaintiff has adequately alleged a denial of medical care and that the allegations set forth above are sufficient to plead a plausible claim against PrimeCare. *See Thomas v. Harrisburg City Police Dept.*, No. 1:20-cv-01178, 2021 WL 4819312, at *11-12 (M.D. Pa. Oct. 15, 2021) ("Plaintiffs have plausibly alleged that PrimeCare failed to adequately train its employees to recognize signs of a drug overdose and to respond appropriately."). Therefore, we will deny the motion to dismiss.

**C.   *The Complaint adequately alleges a cause of action of Failure to Intervene***

The PrimeCare defendants argue that the Third Circuit has not recognized a cause of action for failure to intervene by medical staff in a prison.  (Doc. 25, at 13).  In support of this argument, they rely upon a decision of this Court by the Honorable Yvette Kane in *Harris v. Hershey Med. Ctr.*, No. 1:08-cv-843, 2009 WL 2762732, at *6 (M.D. Pa. Aug. 27, 2009), where Judge Kane dismissed a failure to intervene claim against a prison nurse under *Ali v. McAnany,* 262 Fed. App'x 443, 446 (3d Cir. 2008) ("The claim against Hoffman [a prison nurse] is also subject to dismissal because she is not a corrections officer and thus did not have a duty to intervene ...."). However, *Harris* involved the failure of prison officials, including the defendant prison nurse, to intervene in the context of a corrections officer's assault on an inmate.  When faced with facts like the case now before the Court, Judge Kane denied a motion to dismiss the failure to intervene claim where the individual defendants, including PrimeCare employees, were all allegedly aware that the decedent ingested cocaine, a circumstance which should have required emergency medical care.  *Thomas*, 2021 WL 4819312, at *6.  Accordingly, we find

17

that the plaintiff has plausibly alleged a failure to intervene claim, and we will deny the motion to dismiss.

An appropriate Order follows.

**_s/Joseph F. Saporito, Jr._**
**JOSEPH F. SAPORITO, JR.**
**U.S. Magistrate Judge**

Dated:  January 30, 2023